# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-2790 |
| | ) | |
| | ) | |
| JACQUELINE KEY, TESKA KEY, | ) | |
| and JOHNNY MARSHALL III, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This is a civil action brought by the United States seeking avoidance of an allegedly fraudulent transfer of property. Before the Court is Plaintiff United States' (the "government") March 19, 2019 Motion for Summary Judgment. (ECF No. 39.) Defendants Jacqueline Key, Teska Key, and Johnny Marshall III (collectively, the "Defendants") responded on May 29, 2019. (ECF No. 53.) The government replied on June 11, 2019. (ECF No. 57.)

For the following reasons, the government's Motion for Summary Judgment is GRANTED.

### I. Background

On July 21, 2016, a grand jury indicted Jacqueline Key and Teska Key for unlawfully transporting stolen goods in interstate commerce, a violation of 18 U.S.C. § 2314. (ECF No. 1-3 at 2; ECF

No. 1 ¶ 10.).  The superseding indictment alleged that the conduct took place between September 17, 2013, and July 24, 2015.  (ECF No. 1-3 at 2.)

On October 4, 2016, and December 7, 2016, Teska Key and Jacqueline Key, respectively, pled guilty to the charges against them.  (ECF Nos. 1-5, 1-6.)  On April 21, 2017, and April 24, 2017, Jacqueline Key and Teska Key, respectively, were sentenced to 30 months and 47 months in prison, with joint and several restitution to be paid to Brother International Corporation and Saddle Creek Corporation in the amount of $354,343.86.  (ECF No. 1-1.)  On imposition of the separate judgments against Jacqueline Key and Teska Key, statutory liens were created in the government's favor on all property and rights to property belonging to them.  See 18 U.S.C. § 3613(c); (ECF Nos. 1-7, 1-8).

On August 6, 2015, a warrant was executed to search Teska Key's house, 4909 Noel Mission, Memphis, Tennessee 38125, for evidence of stolen goods.  (ECF No. 1-9.)  Slightly more than two months after that search, on October 12, 2015, Jacqueline Key quitclaimed Parcel Number 013059-00018, 1333 Sardis Street, Memphis, Tennessee 38106 (the "Property") to Johnny Marshall III ("Marshall") for the sum of one dollar ($1.00).  (ECF No. 1-4 at 2-4.)

On October 26, 2017, the government filed this complaint for fraudulent transfer against Jacqueline Key, Teska Key, and Johnny

Marshall III, alleging the transfer of the Property to be fraudulent and made with the intent to hinder, conceal, and delay the government in collecting the restitution debt owed by the Keys. (ECF No. 1.) The government moves for summary judgment, asking the Court to declare the quitclaim of the Property from Jacqueline Key to Marshall to be fraudulent and void. (See ECF No. 39-2.)

**II. Jurisdiction**

Under 28 U.S.C. § 1345, district courts have original jurisdiction "of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." The government brings this suit under 28 U.S.C. §§ 3301, et seq. The Court has jurisdiction.

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing

that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

**IV. Analysis**

In 1990, Congress enacted the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001, et seq. ("FDCPA"). The FDCPA authorizes, inter alia, the United States to obtain the avoidance of a debtor's fraudulent transfer of assets. 28 U.S.C. § 3006; see United States v. Schippers, 982 F. Supp. 2d 948, 964 (S.D. Iowa 2013). Where, as here, a debt arises after a transfer has been made, the transfer can be declared fraudulent if the debtor

4

made the transfer or incurred the obligation "with actual intent to hinder, delay, or defraud a creditor . . . ." 28 U.S.C. § 3304(b)(1)(A). "Because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." In re Grove-Merritt, 406 B.R. 778, 793–94 (Bankr. S.D. Ohio 2009) (citing Schilling v. Heavrin (In re Triple S Rests., Inc.), 422 F.3d 405, 416 (6th Cir. 2005)); see also United States v. Leggett, 292 F.2d 423, 426 (6th Cir. 1961). When inferring fraudulent intent under § 3304(b)(1)(A), courts consider eleven "badges of fraud":

    (A) the transfer or obligation was to an insider;

    (B) the debtor retained possession or control of the property transferred after the transfer;

    (C) the transfer or obligation was disclosed or concealed;

    (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    (E) the transfer was of substantially all the debtor's assets;

    (F) the debtor absconded;

    (G) the debtor removed or concealed assets;

    (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

    (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(2)(A)-(K); see also United States v. Furnari, 73 F. Supp. 3d 877, 886 (E.D. Mich. 2014). Although courts can consider other factors, they are not required to do so. Furnari, 73 F. Supp. 3d at 886 (citations omitted). Once badges of fraud have been established, the presumption of actual fraudulent intent is assumed, and the burden shifts to the debtor to establish the absence of fraudulent intent. See In re Gabor, 280 B.R. 149, 157 (Bankr. N.D. Ohio 2002) (citations omitted).[1] "[T]he confluence of several badges can be conclusive evidence of fraudulent intent, absent significantly clear evidence of debtor's legitimate supervening purpose." Id. (citations omitted).

The government argues that its evidence establishes actual fraud because it establishes seven of the eleven badges of fraud. (ECF No. 39-2 at 7-10; No. 57 at 3-5.) The government argues, alternatively, that its evidence establishes constructive fraud in violation of § 3304(b)(1)(B)(ii), which allows avoidance of

---

[1] Because the "badges of fraud" factors and analysis are "nearly identical" across different debt-collection legislation, see United States v. Holt, 664 F.3d 1147, 1150 n.2 (8th Cir. 2011) (citing In re Addison, 540 F.3d 805, 813-14 n. 11 (8th Cir. 2008)), courts interpreting the FDCPA have relied on case law outside the FDCPA context. See, e.g., Vancampen v. U.S., ex rel. I.R.S., No. CIV. A. 95-1436-FGT, 1997 WL 873537, at *4 (D. Kan. July 9, 1997).

transfers where the debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."[2] (Id. at 11-12.) In response, Defendants cite cases reitering summary judgment standards. (See ECF No. 53.) Defendants do not directly dispute or even address the government's arguments that the transfer of the Property was fraudulent. Defendants deny that Marshall failed to give "reasonably equivalent value" for the transfer and that Jacqueline Key retained control of the property. (See ECF No. 53-2 ¶¶ 3, 21; ECF No. 39-1 ¶¶ 3, 21.)

**A. Badges of Fraud**

Under § 3304(b)(1)(A), the only element the government needs to prove is "actual intent" to defraud. See Schippers, 982 F. Supp. 2d at 965. That element can be satisfied by establishing "badges of fraud." See id. Here, the government has establishes five of eleven badges of fraud.

**1. The transfer or obligation was to an insider**

It is undisputed that Marshall is Jacqueline Key's son. (See ECF No. 39-3 at 7; No. 39-7 ¶ 5.) As her son, he was an insider. See 28 U.S.C. § 3301(5)(A)(i) (defining "insider" under the FDCPA

---

[2] In its complaint, the government pleads a third theory of fraudulent transfer, relying on § 3304(a)(1). (See ECF No. 1 at 8-9.) The government has not pursued that theory at summary judgment. (See ECF No. 39-2.) Section 3304(a) applies only to "debt arising before [a] transfer." See 28 U.S.C. § 3304(a).

7

as "a relative of the debtor"); id. § 3301([7]) (defining "relative" as "an individual related, by consanguinity . . . within the third degree). The first badge of fraud is established.

**2. The debtor retained possession or control of the property transferred after the transfer**

The government argues that Jacqueline Key "retained control" of the Property because the Property remained listed as an asset in her bankruptcy filings. (ECF No. 39-2 at 3.) That argument fails. Jacqueline Key's bankruptcy case was filed in 2010, (see ECF No. 39-4), almost five years before the transfer of the Property to Marshall in 2015. (See ECF No. 1-4 at 2-4.) The government concedes this point, but argues that the listing is still evidence that Jacqueline Key retained control of the Property because "she failed to amend the bankruptcy schedules to reflect that the . . . Property was no longer an asset in the bankruptcy case, which is required by 11 U.S.C. § 521(a)(1)." (ECF No. 39-2 at 3.) The government argues that the Property was listed as a rental property in Jacqueline Key's bankruptcy schedule and that the bankruptcy schedule shows that she received $500 in rental income monthly. (ECF No. 39-1 ¶ 21.) The government assumes that this rental property income was used to fund her bankruptcy plan payments and that without the rental income, she could not have afforded the payments. (Id.) The government concludes that, because Jacqueline Key received rental income from the Property

8

that funded bankruptcy plan payments, she must have retained control of the Property. (See id.)

These assumptions and inferences are insufficient to establish that Jacqueline Key retained control of the Property. To conclude as the government does, the Court would have to make broad inferences and assume evidence and facts that are not in the record. There is no other evidence that Jacqueline Key retained control of the Property. In fact, the evidence suggests that Marshall maintains control because Jacqueline Key is incarcerated and Marshall has managed rental of the Property. (See ECF No. 39-10); United States v. White-Sun Cleaners Corp., No. 09-cv-2484 ARR JO, 2011 WL 1322266, at *14 (E.D.N.Y. Mar. 9, 2011) (finding that a defendant retained control over a property by continuing to manage it), report and recommendation adopted, No. 09-cv-2484 ARR JO, 2011 WL 1303271 (E.D.N.Y. Mar. 31, 2011). The second badge of fraud is not established.

### 3. The transfer or obligation was disclosed or concealed

The government does not cite any evidence that Jacqueline Key disclosed or concealed the transfer of the Property. The third badge of fraud is not established.

### 4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit

The government argues that when Jacqueline Key transferred the Property to Marshall, she knew, or reasonably should have

9

known, that she would be prosecuted and forced to pay restitution for her crime. (ECF No. 39-2 at 2-3.) On August 6, 2015, a search warrant was executed on Teska Key's house, in which Jacqueline Key lived, to support an investigation of the crime to which Jacqueline Key eventually pled guilty. (ECF No. 1-9.) Slightly more than two months after that search, on October 12, 2015, Jacqueline Key quitclaimed the Property to Marshall. (ECF No. 1-4 at 2-4.) Although knowledge of the substantial possibility of future litigation is not the same as being sued or threatened with suit, the circumstances here are sufficient to establish this badge of fraud. See Schippers, 982 F. Supp. 2d at 967 (finding this badge of fraud satisfied when the government had not brought legal action against the defendant but was "on his trail" and where, under the circumstances, the defendant should have anticipated that the government would take legal action against him); United States v. Sherrill, 626 F. Supp. 2d 1267, 1273 (M.D. Ga. 2009) (same). The fourth badge of fraud is established.

### 5. The transfer was substantially all of debtor's assets

Jacqueline Key filed for bankruptcy in 2010. (See ECF No. 39-4.) In her bankruptcy filings, she listed the total value of her real property as $214,400, with the value of the Property as $60,600. (ECF No. 39-4 at 1.) The value of her personal property was $8,158. (ECF No. 39-4 at 4.) Because the assumed value of

the Property is less than a third of the value of Jacqueline Key's total assets, the fifth badge of fraud is not established.

**6. The debtor absconded**

The government does not cite any evidence in the record that Jacqueline Key absconded. The sixth badge of fraud is not established.

**7. The debtor removed or concealed assets**

The government does not cite any evidence in the record that the Jacqueline Key removed or concealed assets. The seventh badge of fraud is not established.

**8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.**

Reasonably equivalent value under § 3304(b) means "the debtor has received value that is substantially comparable to the worth of the transferred property." United States v. Loftis, 607 F.3d 173, 177 (5th Cir. 2010) (quoting BFP v. Resolution Tr. Corp., 511 U.S. 531, 548 (1994) (interpreting the same term in the Bankruptcy Code)); see also 28 U.S.C. § 3303(b). "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." 28 U.S.C. § 3303(a).

There is a dispute in the record about the exact value of the Property. In Jacqueline Key's 2010 bankruptcy proceeding, she listed the value of the Property as $60,600. (ECF No. 39-4 at 1.) In 2017, the value of the Property was appraised at $41,700. (ECF No. 1-10.) In December of 2018, Marshall subjectively valued the Property at $28,000. (ECF No. 39-7 ¶ 7; No. 39-3 at 25-28.) For purposes of analyzing this badge of fraud, the Court assumes that the monetary value of the Property at the time of the transfer, in 2015, was somewhere between $28,000 and $60,600.

The quitclaim deed provides that the Property was transferred to Marshall "for and in consideration of the sum of One Dollar . . . and other good and valuable consideration, . . ." (ECF No. 1-4 at 2) (capitalization omitted).[3] Marshall submits in an affidavit that the reason for the transfer was that Jacqueline Key was ill and needed assistance with the maintenance and expenses of the property and that Jacqueline Key wanted Marshall to have "a good start in life."[4] (ECF No. 53-1 ¶ 2-3.) In response to

---

[3] The signatory portion of the quitclaim deed provides "I HEREBY SWEAR OR AFFIRM THAT TO THE BEST OF AFFIANT'S KNOWLDEGE, BELIEF, AND INFORMATION, THE ACTUAL CONSIDERATION FOR THE TRANSFER IS $-0-" with Jacqueline Key's signature following. (See ECF No. 1-4 at 3.)

[4] "Any intangible, emotional benefit is not included within the meaning of reasonable equivalent value, because '[w]ithin the meaning of [28 U.S.C. § 3303], value means economic value.'" See United States v. Moore, 156 F. Supp. 2d 238, 246 (D. Conn. 2001) (quoting Vancampen v. United States, Nos. Civ. A. 95-1436-FGT, Civ. A. 95-1453-FGT, 1997 WL 873537, at *3-4 (D. Kan. 1997)); see also Sherrill, 626 F. Supp. 2d at 1273-74 ("The fact that the quitclaim deeds indicate that the consideration was for a nominal dollar amount and love and affection

interrogatories, when asked if he paid fair value for his ownership interest in the Property, Marshall responds that "[t]he consideration was my assumption of the property taxes owed at that time." (ECF No. 39-7 ¶ 8.) In his deposition, Marshall states that he did not pay his mother anything for the property, but that the consideration was his assumption of the property taxes owed. (ECF No. 39-3 at 13-15, 19, 28, 31.)

The record is not clear about the amount of taxes owed at the time of transfer. The government submits evidence of city taxes for the Property from 2010 to 2015 totaling a little under $9,000. (See ECF No. 39-11.) There is no evidence in the record about what amount of those taxes, if any, was paid or due at the time of the transfer. The amount of county taxes from that time is unknown. (See ECF No. 39-12). Marshall submits that he has been paying some taxes on the Property since the transfer, (ECF No. 39-3 at 19-21, 28-29), but concedes that he owes an outstanding amount of about $13,000. (ECF No. 39-3 at 19, 28; see also ECF Nos. 39-11, 39-12.)

Satisfaction of antecedent debt can constitute "value" as defined by the FDCPA. See 28 U.S.C. § 3303(a). However, "value" under the FDCPA does not include an "unperformed promise." Id.

---

does not help [defendant's] case.") (citations omitted).

13

Marshall's taxes-as-consideration argument fails because his agreement to pay future taxes does not constitute "value" under the statute. Although any satisfaction of antecedent, outstanding taxes on the Property might constitute value, the record is devoid of information about the amount of taxes, if any, Marshall paid at the time of the transfer.[5] The Court cannot assume that any antecedent debt was paid.

Reading the record favorably to Defendants, the Court finds that the consideration Marshall gave Jacqueline Key was not equivalent to the value Marshall obtained. See Vancampen v. United States, Nos. Civ. A. 95-1436-FGT, Civ. A. 95-1453-FGT, 1997 WL 873537, at *3-4 (D. Kan. 1997) (finding that one dollar, the debtor's desire to spare her husband embarrassment, and the promise for future financial support was not enough consideration to constitute reasonable equivalent value for a transfer of property). The eighth badge of fraud is established.

**9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred**

Section 3302 provides that a debtor becomes insolvent when "the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 28 U.S.C. § 3302(a). There is a presumption of insolvency when a debtor generally does not pay his

---

[5] "Value is determined as of the date of transfer." In re Hinsley, 201 F.3d 638, 644 (5th Cir. 2000) (citation omitted).

debts as they become due.  28 U.S.C. § 3302(b).  Filing a petition in bankruptcy is evidence of insolvency.  <u>In re Porter</u>, 50 B.R. 510, 517 (Bankr. E.D. Va. 1985).  Defendants do not dispute that Jacqueline Key was insolvent at the time of the transfer.  (<u>See</u> ECF No. 39-3 at 35-36; <u>see also</u> ECF No. 39-4.)  The ninth badge of fraud is established.

    **10. The transfer occurred shortly before or shortly after a substantial debt was incurred.**

The transfer occurred in October of 2015.  (ECF No. 1-4 at 2-4.)  Jacqueline Key was indicted in July of 2016.  (ECF No. 1-3 at 2.)  On April 21, 2017, a judgment was entered against her in which she incurred a restitution debt of $354,343.86. (ECF No. 1-1.)  Although the time between incurring the debt and the transfer was not short, the time between the transfer and the indictment was.  That is sufficient to establish this badge of fraud. <u>See</u> <u>Schippers</u>, 982 F. Supp. 2d at 970; <u>Sherrill</u>, 626 F. Supp. 2d at 1275.  The tenth badge of fraud is established.

    **11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.**

The eleventh badge of fraud is not applicable.

The government has established five of the eleven statutory badges of fraud.  The presumption of actual intent to defraud under § 3304(b)(1)(A) is assumed.  <u>See</u> <u>In re Gabor</u>, 280 B.R. at 158 (finding fraudulent intent where the debtor made the transfer in

15

the face of actual or threatened litigation against the debtor; while insolvent; without fair consideration for the transfer; and where the transferee was in a special relationship to the debtor); Schippers, 982 F. Supp. 2d at 953 (finding "actual intent to . . . defraud" under § 3304(b)(1)(A) when the recipient was an insider; there were mounting criminal and civil suits against the debtor before the transfers were made; the debtor transferred substantially all of his assets to the recipient; the debtor did not receive equivalent value for the transfers; the debtor was insolvent before and after the transfers occurred; and the transfers occurred shortly before the debtor incurred a substantial debt). The burden shifts to Defendants to establish the absence of fraudulent intent. See In re Gabor, 280 B.R. at 157.

**B. Defendants' Rebuttal**

In their response to the government's Motion for Summary Judgment, Defendants recite the standards for summary judgment. (See ECF No. 53.) The response is almost entirely devoid of argument. Read in the most generous light, the Court construes Defendants to argue that summary judgment is improper because whether a defendant had an "intent to defraud" is an issue that must be decided by the trier of fact.[6]

---

[6] Without citing any case law, Defendants argue in their response that: "There should be some hesitancy in granting a motion for summary

The question at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (emphasis added); see also Matsushita, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

judgment in a case like this where the property rights of a person who was not involved in the criminal case that underlies this civil proceeding may lose his property. The 5th Amendment mandates that due process be met." (ECF No. 53 at 2-3.) District courts in this Circuit are instructed "to withhold judgment on issues not fully developed by the briefs or in the record. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." United States v. Sandridge, 385 F.3d 1032, 1035-36 (6th Cir. 2004) (citation omitted); see, e.g., Sherman v. Michigan Dep't of Nat. Res., No. 18-13179, 2019 WL 1556318, at *5 (E.D. Mich. Apr. 10, 2019), aff'd, No. 19-1405, 2020 WL 236631 (6th Cir. Jan. 15, 2020). The Court need not address Defendants' due process argument because it is "perfunctory" and "skeletal."

case, and on which that party will bear the burden of proof at trial.") (emphasis added).

Here, the evidence is so one-sided that the government must prevail as a matter of law. See BMG Music v. Martinez, 74 F.3d 87, 91 (5th Cir. 1996) (affirming a grant of summary judgment that found a transfer fraudulent where the government presented evidence that established numerous badges of fraud and the defendant's only rebuttal was a self-serving statement). The only evidence Defendants produce to support their position that the transfer of the Property was not fraudulent is Marshall's conclusory, self-serving affidavit. (See ECF No. 53-1 ¶ 6) ("I did not accept the property or agree for the property to be devised to me with the intent to avoid any debt to the United States or any other entity."). For purposes of § 3304(b)(1)(A), it is the intent of the debtor that matters -- the intent or knowledge of the transferee, although potentially informative, is not at issue. (See 28 U.S.C. § 3304(b)(1)(A) ("[A] transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, . . . if the debtor makes the transfer or incurs the obligation . . . with the actual intent to . . . defraud . . .") (emphasis added); cf. Sherrill, 626 F. Supp. 2d at 1275 (collecting cases finding that "the intent of the transferee is irrelevant" in

Uniform Fraudulent Transfer Act cases).[7] Even taking Marshall's statement as true, Defendants have not overcome the strong evidence the government puts forth that the transfer was fraudulent.

A reasonable jury could only find that Jacqueline Key's transfer of the Property to Marshall was made with the intent to "hinder, delay, or defraud" the government. 28 U.S.C. § 3304(b)(1)(A); see Schippers, 982 F. Supp. 2d at 971 & n.16 (collecting cases finding as a matter of law that defendant transferred property with the actual intent to defraud under § 3304 where there were multiple badges of fraud). Summary judgment is warranted.[8]

**V.  Remedy**

Under 28 U.S.C. § 3306, the Court may "avoid[] . . . [a] transfer or obligation to the extent necessary to satisfy the debt to the United States." 28 U.S.C. § 3306(a)(1). The transfer of Parcel Number 013059-00018 located at 1333 Sardis Street, Memphis,

---

[7] Section 3307(a) provides an affirmative defense to claims brought under § 3304(b) for "a person who took [a transfer] in good faith and for a reasonably equivalent value . . . ." Even assuming Marshall accepted the Property in good faith, he did not receive reasonably equivalent value for it. See supra, at 11-14. He is not entitled to this defense. See Loftis, 607 F.3d at 176 n.3; United States v. Kirtland, No. 11-4090-JTM, 2012 WL 4463447, at *16 (D. Kan. Sept. 27, 2012).

[8] Because the Court concludes that the transfer was fraudulent under § 3304(b)(1)(A), it need not address the government's alternative argument that the transfer was fraudulent under § 3304(b)(1)(B)(ii). See Loftis, 607 F.3d at 178 n.5.

Tennessee 38106, from Jacqueline Key to Johnny Marshall III on October 12, 2015, is a fraudulent transfer under 28 U.S.C. § 3304(b)(1)(A) and void to the extent necessary to satisfy the government's judgment in <u>United States v. Key, et al.</u>, No. 15-cr-20288 (W.D. Tenn.).

**VI. Conclusion**

For the foregoing reasons, the government's Motion for Summary Judgment is GRANTED.


So ordered this 24th day of January, 2020.


                                  /s/ *Samuel H. Mays, Jr.*
                                  SAMUEL H. MAYS, JR.
                                  UNITED STATES DISTRICT JUDGE